SiNNOtt, Judge,
delivered the opinion of the court:
Plaintiff in its petition seeks to recover the sum of $21,-986.91 for services which it claims to have rendered in an attempt to salvage defendant’s water barge No. 31. While attached to the Navy squadron the said barge became stranded on Cat Island, one of the Bahama group, off Nassau. She settled on the rocks, the pinnacles of which punctured her bottom. The commander of the fleet early March 7, 1921, caused to be removed from the stranded barge all portable material and took off the officers and crew.
Plaintiff proceeded to the wreck of said barge, arriving alongside on March 11,1921, and found the barge ashore and abandoned, all portable articles thereon having been theretofore removed.
On the same day an officer of said barge came alongside and boarded her and talked with Sloan Danenhower, president of plaintiff corporation, about salvaging the barge. Danenhower told said officer that he was proceeding with a diver’s examination and an attempt at salvage. Said officer said “All right; good luck to you,” and departed in the sloop in which he came.
Danenhower then took up quarters on board the wreck and transferred provisions, diving apparatus, and gear to her. On this conversation with the said officer plaintiff bases its right to recover for the bill referred to in Finding VIII, viz:
(a) For expenses incurred prior to signing contract and supported by vouchers_$2,154.49-
We find nothing in this loose conversation with the officer to sustain any agreement with defendant covering salvage. Even if said loose talk could be construed into an understanding, with, reference to salvaging the water barge, there was no evidence that the said officer had any authority to bind defendant.
*567 After making an examination of the wreck, plaintiff wired to the Secretary of the Navy as follows:
“ Navy water barge thirty-one twenty-four forty-two seventy-five forty-eight exposed position all compartments flooded. Divers report holes in forepeak hold fire and engine rooms. All hands abandoned ship. Found vessel deserted. Will remain aboard preventing looting proceeding salvage. Offer float. Actual expenses guaranteed plus bonus thirty-three thousand if successful or day’s work regular schedule. Request telegraphic decision Nassau and confirmation authority remain in charge of operations.”
On March 31, 1921, plaintiff’s president, Sloan Danen-hower, being at Key West, Florida, received the following letter from J. L. Latimer, captain U. S. N. commandant, seventh naval district, at Key West:
“Subject: The salvage of Navy water barge No. 31.
“ I am authorized by the Bureau of Construction and Repair, Navy Department, to direct you to proceed with salvage of water barge No. 31, under the following conditions, namely:
“ The department will pay actual expenses of operation whether successful or not, and if vessel is delivered at navy yard, Charleston, within forty-five (45) days from the date of acceptance of this order will in addition pay bonus provided expenses paid will not be in excess of thirty-five thousand dollars, bonus not in excess of twenty-five thousand dollars, and expenses and bonus together not in excess of fifty thousand dollars.
“ Please inform me in writing if you will accept these conditions.”
Plaintiff accepted the conditions set forth in the above letter on the same date. Plaintiff proceeded under the authority in the said letter, secured equipment, hired labor, and was engaged in salvaging the water barge until April 12, 1921, when a storm so damaged the wrecked water barge as to cause plaintiff to cease operations. Plaintiff then sent to the Secretary of the Navy the following radiogram from Nassau, on April 19, 1921:
“ Barge 31 at 4.00 a. m. April twelfth in northwest gale was lifted bodily by heavy sea forty feet to eastward Stop At 7.00 a. m. stern sagged six feet submerging after part *568 breaking bottom and buckling sides of boiler room Stop Can cut at boiler room and float forward end but do not recommend Stop Consider -vessel constructive total loss Stop Kecommend stripping and abandoning Stop Please radio decision direct.”
On April 22, 1921, the Secretary of the Navy replied to, the above by radio, as follows:
“ 2022 refer your nineteenth April stop salvage period turn in salvaged material to commandant seventh district 0545.”
On receipt of the above radiogram, plaintiff proceeded to strip the wrecked barge of its apparel and loaded the salvaged material, the result of the stripping, on the schooner Grosland, and delivered the same to defendant at Key West. This stripping of the barge’s apparel and delivery at Key West is the basis for plaintiff’s bill, referred to in Finding VIII, viz:
(c) Itemized account under contract of Marcli 31, 1921, as amended by radiogram from Secretary of the Navy and received April 22, 1921, heretofore referred to in Finding VI_$19, 832.42
We find no direction or authority in the radiogram from the Secretary of the Navy, which the plaintiff received on April 22, 1921, referred to in Finding VI, authorizing or directing the plaintiff to proceed to strip said barge of its apparel.
In view of the fact that the salvage contract of March 31, supra, limited plaintiff’s expense to $35,000 if unsuccessful, for which it presented a bill of over $34,000, and in view of the further fact that said contract limited the plaintiff’s bonus and expense together to $50,000, if plaintiff succeeded in delivering the barge to the navy yard at Charleston, it was indeed a violent assumption on the part of plaintiff to assume that the radiogram of April 22 authorized it to proceed with the stripping of the wreck of apparel valued at $2,017.63 by competent appraisers, and to obligate the defendant to pay the further sum of $19,000, which sum added to plaintiff’s bill submitted to the Navy Department, referred to in Finding VIII (b), would exceed the limit of $50,000 for both expense and bonus if successful, provided for in said contract of March 31.
*569 The radiogram was a direct and positive order to stop salvage. Prior to the date of the receipt of this radiogram, it does not appear that plaintiff had stripped or salvaged any of the ship’s apparel. The stripping of the ship was a salvage service. Plaintiff had positive orders to “ stop salvage.” Salvage is defined as follows:
“A salvage service, in the view of the Court of Admiralty, may be described, sufficiently for practical purposes (c), as a service (d) which saves or helps to save maritime property — a vessel, its apparel, cargo, or wreck * * Page 2, “ The Law of Civil Salvage,” Ld. Justice Kennedy.
“ Salvage, apart from life salvage, is by the maritime law of England confined to ship, apparel, and cargo, or what has formed part of these, and to freight earned by carriage of cargo. A similar rule seems to be laid down in a decision of the Supreme Court of the United States.” — 35 Cyc. 738.
Webster’s Dictionary defines nautical “ apparel ” as follows :
“ (5) Naut. The equipment of a ship, as masts, sails, rigging, anchors, guns, etc.”
It is apparent from the above definitions of “ salvage ” and ship’s “ apparel ” that plaintiff was not authorized by the radiogram which it received from the Secretary of the Navy on April 22, 1921, to proceed to strip the ship of its apparel or to further salvage the ship, other than to turn in the salvaged material already collected to the commandant of the seventh district. As to the order to turn in the salvaged material, it does not appear that plaintiff had stripped or salvaged any of the ship’s apparel prior to the receipt of said radiogram.
Therefore, in our opinion, plaintiff’s bill, (c) in Finding VIII, should be disallowed for the reason that the basis of the claim is founded on the stripping of the wreck, after the receipt of the radiogram ordering plaintiff to “ stop salvage,” at which time plaintiff had not salvaged any of the wrecked barge’s apparel. Had plaintiff had on hand, at the time of the receipt of said radiogram, any of the ship’s apparel which it had salvaged, it was authorized by said radiogram to deliver the salvaged material to the commandant of the seventh district. Had this been the case we would *570 be compelled to bold that such service was fairly within the scope of the salvage contract between plaintiff and defendant, referred to in Finding V, under which plaintiff submitted its bill to the Navy Department, referred to in Finding VIII, “(b) For expenses incurred under contract of March 31, 1921,” under which said contract plaintiff settled its claim and gave a release for the consideration of $30,000, as is shown in Finding IX.
We are of the opinion that plaintiff’s petition should be dismissed. It is so ordered and adjudged.
Green, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.